# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAYMOND MIRACLE,**

   Petitioner,

v.            Civil Action No. 1:12cv183
                 (JUDGE KEELEY)

**WARDEN RUSSELL PURDUE,**

   Respondent.

## REPORT AND RECOMMENDATION

### I.

### Introduction

On December 27, 2012, the *pro se* petitioner, Raymond Miracle, an inmate at FCI Gilmer, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Dkt. No. 1. The petitioner alleges that he was punished and his good conduct time was revoked without adequate due process following a disciplinary proceeding. *Id.* Further, the petitioner requests that the Court expunge the incident report from his record. *Id.* Also on December 27, 2012, the petitioner submitted a memorandum in support of his § 2241 petition. Dkt. No. 1-2.

On February 8, 2013, the petitioner paid the requisite five dollar filing fee. Dkt. No. 10. Then, on February 20, 2013, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Dkt. No. 11. Accordingly, an Order to Show Cause was issued against the respondent. *Id.*

On March 8, 2013, the respondent filed a motion to dismiss or for summary judgement as

1

well as a memorandum in support with several attached exhibits. Dkt. Nos. 16-17. On March 11, 2013, the Court issued a *Roseboro* notice. Dkt. No. 18. The petitioner filed his answer on March 27, 2013. Dkt. No. 24.

## II.

## Facts

*A. Original Conviction and Sentence*

The petitioner has been a federal prisoner since 2008. *See* 6:07-cr-00052-GFVT-REW-1, Dkt. No. 50. At the time of this incident, the petitioner was serving a ninety (90) month sentence for Conspiracy to Distribute Oxycodone, a concurrent sixty (60) month sentence for Conspiracy to Counterfeit United States Currency, and a consecutive fifty (50) month sentence related to the revocation of his previous supervised release. *See* 6:07-cr-00052-GFVT-REW-1, Dkt. No. 50 and 5:00-cr-00072-GFVT-1, Dkt. No. 75. The petitioner is currently projected for release on June 14, 2017.

*B. Current Incident*

On September 15, 2009, the petitioner was observed by prisoner security personnel interacting with three other inmates around the bleachers of FCI Gilmer's softball field. Dkt. No. 1-2, p. 3. As the inmates left the area, Recreation Specialist D. Cowell searched the right field fence line under suspicion that one of the inmates other than the petitioner had taken something from under the bleachers and dropped it there. Dkt. No. 17, p. 5. Recreation Specialist Cowell recovered two metal weapons. *Id.* An incident report was prepared charging the petitioner with Aiding in Possession, Manufacture, or Introduction of a Weapon in violation of Prohibited Act 104 of the Bureau of Prisons' (BOP) Discipline Code. Dkt. No. 17-2. This incident report was deliver to the

petitioner on September 16, 2009. *Id.* at 1.

Eventually, a Discipline Hearing Officer (DHO) found the petitioner guilty of committing the crime as charged on November 5, 2009. Dkt. No. 1-4, p. 53. The petitioner appealed and was granted a rehearing. Dkt. No. 17-6. The incident report to be reheard was delivered to the petitioner on July 25, 2011. Dkt. No. 17-7, p. 1. The petitioner acknowledged receipt of his rights at the hearing on July 29, 2011. Dkt. No. 17-8. Also on July 29, 2011, the petitioner received notice of a hearing before the DHO and did not request witnesses at that hearing. Dkt. No. 17-9. The petitioner requested that staff representative Officer Bowen be present at the hearing. *Id.* One week prior to the DHO hearing, the petitioner was advised that Officer Bowen would be unable to attend. Dkt. No. 17 at 7. On September 8, 2011, the petitioner selected Counselor D. Kemper to replace Officer Bowen, but refused to initial the change. Dkt. No. 17-9.

The hearing was conducted the same day, and the petitioner was again found guilty as charged. Dkt. No. 17-10. The DHO relied upon a statement provided by Recreation Specialist Cowell, a memorandum from Recreation Specialist S. Heath, a photograph of the weapons, a statement provided by Investigating Officer Captain V. Dupuis, a statement by the petitioner, and written statements from two other involved inmates. *Id.* at 3-4. The DHO reached his decision based on the greater weight of the evidence. *Id.* at 4. As punishment, the DHO disallowed forty (40) days of good conduct time and imposed 60 (60) days of disciplinary segregation and ninety (90) days loss of visiting, telephone, and commissary. *Id.* at 5. The DHO noted that these sanctions had already been served. *Id.*

Subsequently, the petitioner filed appeals at the regional and national levels of the BOP's administrative remedy process. Dkt. No. 1-4, p. 3-15. The government admits that the petitioner's

failure to receive a response from the Central Office entitles him to consider the remedy denied. Dkt. No. 17 at 10.

*C. Federal Habeas Corpus*

**1. Petitioner's Contentions**

The petitioner alleges that the BOP violated his due process rights in handling his possession of a weapon charge. Dkt. No. 1 at 10. Specifically, the petitioner claims that he is innocent of the charges and that he has proven so by a greater weight of the evidence. Dkt. No. 1-2 at 9-10. Furthermore, the petitioner finds fault with the disciplinary process for not including a mens rea characteristic. Lastly, the petitioner attacks the respondent's motion based on the current condition of federal prisons. *See generally* Dkt. No. 24.

**2. Government's Response**

The government argues either that the petition should be dismissed or that the government should be awarded summary judgment. Dkt. No. 17. The government supports these positions by arguing that the DHO's process of determining and finding the greater weight of the evidence to be against the petitioner did not violate any due process rights. *Id.* at 11-13.

## III. Standards of Review

*A. Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the

complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Conley,* 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States,* 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal,* where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order

to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

## B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. *Maynard v. Dixon ,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson,* 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986).

## IV.

## Analysis

*A. Due Process Concerns*

The Supreme Court has identified due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him throughout the disciplinary process; (5) the decision-maker must be impartial. *Wolff v. McDonnell,* 418 U.S. 539, 564-571 (1974).

As the petitioner was granted a rehearing of his initial disciplinary proceeding, the undersigned will only focus on the due process elements of that rehearing. First, the petitioner was provided notice at least twenty-four hours before his hearing before the DHO as he acknowledged that he had received written notice on July 29, 2011, and the hearing took place on September 8, 2011. Dkt. No. 17-9 and Dkt. No. 17-10 at 1. Second, the DHO Report carefully details the history of the disciplinary process and contains a lengthy description of all pieces of evidence used. Dkt. No. 17-10 at 3-4. The DHO Report also recommends disallowing forty (40) days of good conduct time, among other sanctions, and discusses both the severity of the charge and the standard discipline policy as reasons for the sanctions. *Id.* at 5. Third, the petitioner was given the opportunity to call witnesses and present evidence, but the petitioner chose not to all any witnesses

7

and instead provided his own statement declaring his innocence along with written statements from two other inmates. *Id.* at 2 and Dkt. No. 1-3 at 2-3. Fourth, while, the petitioner is not illiterate and the matter does not appear to be complex, the petitioner was provided the opportunity to have a staff representative present. Dkt. No. 17-10 at 1. The petitioner was unable to have the specific representative he wished and showed his displeasure by refusing to initial next to the change of representative. Dkt. No. 17-9. However, he was still assisted by Counselor Kemper throughout the hearing. Dkt. No. 17-10 at 1. As *Wolff* only requires a representative and not the representative of the petitioner's choosing, it is the opinion of the undersigned that the fourth prong of *Wolff* has been met. Fifth and finally, while the petitioner does allege some bias in the BOP's disciplinary procedures, he does not suggest nor does he present any evidence that shows that the DHO was partial. *See generally* Dkt. No. 24. Rather, the petitioner argues that the DHO's decision was incorrect not because it was partial but because it stemmed from a theory of "strict liability." Dkt. No. 24 at 2-3. Thus, the BOP provided the petitioner with adequate procedural due process pursuant to *Wolff*.

## B. Sufficiency of Evidence

"[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require . . . weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990).

In *Hill*, a prison disciplinary board determined that three inmates violated prison rules by

assaulting another inmate. The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." *Hill,* 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." *Hill,* 472 U.S. at 457.

In the instant case, the DHO considered conflicting statements regarding the incident along with other pieces of evidence and concluded that the greater weight of the evidence fell against the petitioner. Dkt. No. 17-10 at 4. In accordance with *Baker*, the undersigned will not engage in weighing this evidence again as the petitioner asks. Instead, the undersigned is satisfied that considerably more than "some evidence" was used by the DHO in concluding that the petitioner committed the charged offense and in revoking the petitioner's good conduct time.

*C. Mens Rea Issues*

The petitioner alleges that he has been convicted of Aiding in Possession, Manufacture, or Introduction of a Weapon without evidence of his knowledge of the weapons in question. Dkt. No. 1 at 10. Based on this contention, the petitioner suggests that the BOP policy has removed a mens rea requirement from Prohibited Act 104 in violation of the Fifth Amendment. Dkt. No. 1-2 at 3. While the petitioner provides an intriguing history of the mens rea requirement through American and English common law, his understanding of its application here is misguided. *Id.* at 4-9.

The DHO has not found the petitioner guilty for unknowingly and unwittingly standing next

9

to inmates who violated the BOP Disciplinary Code, but rather has ruled that the petitioner willingly participated in both enabling another inmate to access weapons and helping that inmate conceal his possession of those weapons. *See generally* Dkt. No. 17-10. The DHO is not removing a mens rea requirement by finding that the petitioner's evidence of his innocence is less credible than the opposing evidence. In fact, it is the opinion of the undersigned that the DHO was justified in doing so because the petitioner has admitted to knowledge of the weapons at the time of their possession by arguing that he attempted to convince the other inmates to dispose of the weapons. Dkt. No. 24 at 4. Therefore, the alleged removal of a mens rea element from the offense is completely without merit.

### D. Prison Conditions Defense

Lastly, the petitioner argues that he was forced to participate in the violation due to fear of reprisal, specifically, and the conditions of prisons, generally. *See generally* Dkt. No. 24. The petitioner goes so far as to present a Government Accountability Office article and case law as justification for his claim. *Id.* at 5-7. However, these sources and the argument in general have no bearing on the adjudication of this case. While the government suggests in its motion that the petitioner could have helped his cause by notifying staff of the weapons, they are not insisting that he must have done so. Dkt. No. 17 at 13. The petitioner's fears might be legitimate, but they do not change the fact that his actions led the DHO to find him guilty of Prohibited Act 104, nor do they alter the undersigned's analysis of the petitioner's due process claims. Therefore, all of the petitioner's claims are without merit and must be dismissed.

### V. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to

Dismiss; Motion for Summary Judgment (Dkt. No. 16) be **GRANTED**, and the petitioner's §2241 petition (Dkt. No. 1) be **DENIED and DISMISSED WITH PREJUDICE**.  Any party may file, within fourteen (14) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

      The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet.  The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: June 21, 2013

*John S. Kaull*

      JOHN S. KAULL
       UNITED STATES MAGISTRATE JUDGE